RESPONDENT'S EXHIBIT 2

# VIRGINIA:

*In the Court of Appeals of Virginia on* Tuesday *the* 23rd *day of* April, 2013.

George Wesley Huguely, V,     Appellant,

against     Record No. 1697-12-2
Circuit Court Nos. CR11-102-1 and CR11-102-5

Commonwealth of Virginia,     Appellee.

From the Circuit Court of the City of Charlottesville

Per Curiam

This petition for appeal has been reviewed by a judge of this Court, to whom it was referred pursuant to Code § 17.1-407(C), and is granted in part and denied in part. An appeal is awarded to the petitioner from a judgment of the Circuit Court of the City of Charlottesville, dated August 31, 2012, with respect to the following assignments of error:

    I. The circuit court violated appellant's right to counsel under the Sixth Amendment and Virginia Constitution by forcing him to proceed with trial in the absence of his retained counsel of choice.

    IV. The circuit court erred by refusing to strike for cause Juror 32, whose answers during *voir dire* revealed serious doubts about her impartiality.[1]

Appeal bond or an irrevocable letter of credit in the amount of $500 shall be posted as required by Code § 8.01-676.1 (B). The clerk is directed to certify this action to the trial court and to all counsel of record.

Pursuant to Rule 5A:25, an appendix is required in this appeal and shall be filed by the appellant at the time of the filing of the opening brief. In addition, any party represented by counsel shall file four electronic copies of their brief (and the appendix, if appellant is represented by counsel) with the clerk of this Court.

---

[1] Appellant challenged a total of six jurors in his assignment of error. For the reasons subsequently stated in this order, the assignment of error is denied as to the remaining five jurors.

The electronic copies must be filed on four separate CDs or DVDs and must be filed in Adobe Acrobat Portable Document Format (PDF).[2]

The remainder of the petition for appeal is denied for the following reasons:

II. Appellant contends the trial court violated his right to a fair and impartial jury under the Sixth Amendment and the Virginia Constitution by refusing to order individualized, sequestered *voir dire*. The record reflects that this case generated significant media attention. Appellant and Yeardley Love, the victim, were both students at the University of Virginia, who both played on the school lacrosse teams. Based on the media's interest and the "highly charged" and "sensitive" issues the case raised, appellant sought to have sequestered and individual *voir dire*.

There is no "constitutional right to individualized and sequestered *voir dire* of prospective jurors." Cherrix v. Commonwealth, 257 Va. 292, 300, 513 S.E.2d 642, 647 (1999) (citation omitted). "[T]rial courts have broad discretion to decide how to conduct *voir dire*." Buchanan v. Commonwealth, 238 Va. 389, 400, 384 S.E.2d 757, 764 (1989). "'Since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown.'" In re Times-World Corp., 7 Va. App. 317, 325, 373 S.E.2d 474, 478 (1988) (quoting Press-Enterprise Corp. v. Superior Court, 464 U.S. 501, 505 (1984)).

> "To preserve fairness and at the same time protect legitimate privacy, a trial judge must at all times maintain control of the process of jury selection and should inform the array of prospective jurors, once the general nature of sensitive questions is made known to them, that those individuals believing public questioning will prove damaging because of embarrassment, may properly request an opportunity to present the problem to the judge *in camera* but with counsel present and on the record.
>
> By requiring the prospective juror to make an affirmative request, the trial judge can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy. This process will minimize the risk of unnecessary closure."

Id. at 329-30, 373 S.E.2d at 480 (quoting Press-Enterprise I, 464 U.S. at 512).

---

[2] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

The panel members were given numbers to keep their identities private and they answered a questionnaire, identifying themselves only with their numbers. The trial court advised the panel that they would have the opportunity to raise personal matters individually and indicated they could do so privately if necessary. After posing general questions to the panel, the trial court and counsel conducted individual *voir dire* as necessary based on the answers to the general questions and the questionnaire. Further, those who raised concerns about their prior exposure to the media reports about the case were questioned about its effect on their ability to serve as an impartial juror. The trial court reasonably balanced the potential juror's privacy interests with the media's right of access to the proceedings. Accordingly, the record does not establish the trial court abused its discretion in denying sequestered and individual *voir dire*.

III. Appellant argues the trial court abused its discretion by refusing to allow questions during *voir dire* that were directly relevant to the potential jurors' ability to remain impartial. Appellant sought to inquire whether presentation of evidence that was unflattering to the victim would cause a juror to perceive that as appellant's attempt to "blame the victim." While the question had been approved prior to trial, on the second day of *voir dire*, the trial judge sustained the Commonwealth's objection to the question, stating, "I don't think the question is really a helpful one because I think it all has to do with what the evidence actually shows, and I think without them knowing what the evidence shows, it's hard for them to know whether or not it's going to appear to be blaming the victim or not."

> Trial courts must afford a party a "full and fair" opportunity to ascertain whether prospective jurors "stand indifferent in the cause." LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983), cert. denied, 464 U.S. 1063 (1984). However, it is within the trial court's sound discretion to decide when a defendant has had such an opportunity. Id.

Buchanan, 238 Va. at 401, 384 S.E.2d at 764. "'[A] party has no right, statutory or otherwise, to propound any question he wishes, or to extend *voir dire* questioning *ad infinitum*.'" Skipper v. Commonwealth, 23 Va. App. 420, 427, 477 S.E.2d 754, 757-58 (1996) (quoting Chichester v. Commonwealth, 248 Va. 311, 325, 448 S.E.2d 638, 647 (1994)); see also Code § 8.01-358 (counsel has right to ask "any relevant question to

ascertain whether [a prospective juror] is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein").

> Further, trial courts are not required to allow counsel to ask questions which are so ambiguous as to render the answer meaningless. See LeVasseur, 225 Va. at 579, 304 S.E.2d at 652-53. To be permissible, counsel's questions must be relevant in that they are such as would necessarily disclose or clearly lead to the disclosure of relationship, interest, opinion, or prejudice. See Code § 8.01-358. Where a trial court affords ample opportunity to counsel to ask relevant questions and where the questions actually propounded by the trial court were sufficient to preserve a defendant's right to trial by a fair and impartial jury, we will generally not reverse a trial court's decision to limit or disallow certain questions from defense counsel. See LeVasseur, 225 Va. at 582, 304 S.E.2d at 653; Mackall v. Commonwealth, 236 Va. 240, 251, 372 S.E.2d 759, 766 (1988), cert. denied, 492 U.S. 925 (1989).

Buchanan, 238 Va. at 401, 384 S.E.2d at 764-65.

> The objecting party bears the burden of demonstrating that the trial court abused its discretion in limiting the scope of *voir dire*, see Chichester, 248 Va. at 325, 448 S.E.2d at 647, and must show that the jury panel lacked impartiality or that the jury selection process the court employed was prejudicial. See Beavers v. Commonwealth, 245 Va. 268, 277, 427 S.E.2d 411, 418, cert. denied, 510 U.S. 859 (1993).

Skipper, 23 Va. App. at 427-28, 477 S.E.2d at 758.

Although the trial court struck Juror 34 for cause after an exchange prompted by the line of questioning sought by appellant, the juror's answers demonstrated the ambiguity of the question. As the trial court noted, the juror was not certain whether the hypothetical unflattering evidence would cause him to view appellant in a negative light and candidly stated it would be dependent on the type of evidence and the manner in which it was presented. When the Commonwealth did not object to striking that particular juror, the trial court granted appellant's motion. That the trial court struck this juror, however, does not suggest that the jurors were giving definitive answers that would "necessarily disclose or clearly lead to the disclosure of relationship, interest, opinion, or prejudice." Buchanan, 238 Va. at 401, 384 S.E.2d at 764. This same juror's response exemplified the ambiguity and meaningless nature of the answers obtained from the question. The record does not establish the jury panel lacked impartiality, that the process was prejudicial, or that the trial

court abused its discretion. Accordingly, the trial court did not err by refusing to allow appellant to pose the question during *voir dire*.

IV. Appellant claims the trial court erred by refusing to strike for cause five jurors whose answers during *voir dire* revealed doubts about their impartiality. "The right to a trial by an impartial jury is guaranteed under both the United States and Virginia Constitutions." Gosling v. Commonwealth, 7 Va. App. 642, 645, 376 S.E.2d 541, 543 (1989) (citing U.S. Const. amend. VI; Va. Const. art I, § 8).

> "An accused is entitled to a panel of jurors free from exception before exercising peremptory challenges. Thus, we review a trial court's decision whether to strike a prospective juror for cause for an abuse of discretion and that ruling will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes manifest error."

Cressell v. Commonwealth, 32 Va. App. 744, 755, 531 S.E.2d 1, 6 (2000) (citations omitted). "On appeal we give deference to the trial court's decision whether to retain or exclude a venireman, because the trial court 'sees and hears the juror.'" Moten v. Commonwealth, 14 Va. App. 956, 958, 420 S.E.2d 250, 251 (1992) (quoting Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990)).

> "The partiality or impartiality of an individual juror is a factual issue best determined by the trial court[,]" Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099 (1986)[,] "[b]ecause the trial judge has the opportunity . . . to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors[.]" . . . On appellate review, we must consider the "*voir dire* as a whole, rather than in isolated parts," Turner v. Commonwealth, 234 Va. 543, 548, 364 S.E.2d 483, 486, cert. denied, 486 U.S. 1017 (1988), according the appropriate "deference to the trial court's decision." Moten, 14 Va. App. at 958, 420 S.E.2d at 251.

Swanson v. Commonwealth, 18 Va. App. 182, 186, 442 S.E.2d 702, 704 (1994).

> The constitutional guarantee of an impartial jury does not contemplate excluding those who have read or heard news accounts concerning the case or even exclusion of those who may have formed an opinion based on such accounts. . . . The test, instead, is whether a juror is capable of laying aside a preconceived opinion and rendering "a verdict solely on the evidence."

Cressell, 32 Va. App. at 755, 531 S.E.2d at 6 (quoting Wilmoth v. Commonwealth, 10 Va. App. 169, 173, 390 S.E.2d 514, 516 (1990)). Further, "'[t]he opinion entertained by a juror, which disqualifies him, is an

-5-

opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.'" Justus v. Commonwealth, 220 Va. 971, 977, 266 S.E.2d 87, 91 (1980) (quoting Slade v. Commonwealth, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931)). "[W]hen a prospective juror equivocates about whether he or she has a fixed opinion, the prospective juror should be stricken by the trial court." Taylor v. Commonwealth, 61 Va. App. 13, 23, 733 S.E.2d 129, 134 (2012).

Appellant moved to strike Juror 35 based on his affiliation with the University of Virginia, his belief that the case put the University in a negative light, and his observation that male student athletes tend to be "violent." As to this view, he stated, however, that male athletes were no more violent than anyone else, except in the situation of athletic competition. Juror 35 also stated that, depending on what the evidence was, he could render a not guilty verdict, although he knew he would be the "center of discussion" at work. When asked if the views he had expressed would prohibit him from presuming appellant's innocence, he replied unequivocally, "Oh, no, no." He stated, "I think I could go where the facts take me" and "I think I could remain objective." He also recognized that he had never been in the position of sitting on a jury and did not know how he would respond in the face of the actual evidence. The trial court observed his demeanor, listened to his answers, and found Juror 35 to have communicated his ability to be fair. Nothing in the record indicated he was equivocating about his ability to be impartial, even though he prefaced many statements with, "I think." The trial court did not abuse its discretion in denying appellant's motion to strike Juror 35 for cause.

Appellant moved to strike Juror 182 based on his statement that, from the news reports he had been exposed to, he felt "the Corner," an area near the University, was a "dangerous" place to be at night. He explained he formed this opinion based on the fact that someone died, not that it had "anything to do with guilt or innocence." The juror stated he had not formed an opinion about guilt or innocence based on the media reports and did not know what was accurate or not. When asked if he could base a decision solely on the facts and evidence presented in the case he replied, "I believe that I can." Looking at the answers as a whole, Juror 182 did not indicate any bias, prejudice or fixed opinion that would violate appellant's rights to

-6-

an impartial and fair trial. The trial court did not abuse its discretion in denying appellant's motion to strike Juror 182 for cause.

Appellant moved to strike Jurors 36 and 72, based on their opinions concerning alcohol use. Juror 36 stated that the use of alcohol by young people was "out of control." Juror 36 also stated that she did not "think ill" of these young people, just that it was her general opinion that there was too much drinking. The trial court noted that he "didn't see anything in her comments that indicates that she wouldn't be fair and objective. . . . [[Y]oung people is [sic] the common subject of conversation. I don't think it reflects that she's going to favor one side or the other about it . . . ." Juror 72 expressed her view that alcohol use is "serious" and recounted that her father was an alcoholic who, once while intoxicated, tripped and broke his neck while caring for her mother. Juror 72 stated that while she had those experiences, she was "rational and reasonable" and thought she could "listen impartially and render a good decision based on what I hear. . . . I don't think I would feel it necessary to use my experience to make judgments about what happened in this courtroom." The trial court did not perceive her answers to be equivocal and the record does not demonstrate uncertainty in her responses. Neither juror's views demonstrated an inability to sit impartially and render a fair verdict based on the evidence. The trial court did not abuse its discretion by denying appellant's motions to strike Jurors 36 and 72 for cause.

Finally, appellant moved to strike Juror 211 based on her affiliation with the University such that she was not indifferent to the cause. When asked if any of the information she received from the University concerning the case "caused [her] to form any opinions or understanding or sympathies or anything of that nature," Juror 211 replied, "Not at all, no." Nothing else in her responses indicated that she held any bias or prejudice from her employment with the University. The trial court stated, "there's not a shred of indication that this juror cannot be objective." The record supports this finding. The trial court did not abuse its discretion in denying appellant's motion to strike Juror 211 for cause.

Accordingly, the trial court did not err by refusing to strike the five jurors for cause.

V. Appellant contends the trial court erred by refusing to sequester the jury during trial. Appellant supports this contention by noting the "staggering amount of attention from the local and national media" which included inaccurate and biased information against appellant. "The question whether to sequester the jury is entrusted to the sound discretion of the trial court and the trial court's decision in that regard will not be disturbed absent a showing of an abuse of discretion." Buchanan, 238 Va. at 408, 384 S.E.2d at 768. "The mere fact . . . that there has been media coverage does not require a trial court to sequester a jury." Stockton v. Commonwealth, 227 Va. 124, 138, 314 S.E.2d 371, 380 (1984). When the trial court admonishes the jury to avoid all media coverage and the record does not indicate the jury failed to abide by the trial court's instruction, there is no abuse of discretion in refusing to sequester the jury. See id.; Buchanan, 238 Va. at 408, 384 S.E.2d at 768.

The record reflects that there was substantial local and national media coverage of the trial. However, the record also shows that the trial court repeatedly admonished the jury to avoid all media reports and, upon their return to the courtroom from adjournments, inquired whether anyone had inadvertently, or otherwise, been exposed to media accounts. Nothing in the record suggests the jurors failed to adhere to the instructions or that there was any misconduct. Accordingly, the trial court did not err by refusing to sequester the jury.

VI. Appellant argues the Commonwealth violated the Due Process Clause and Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the material fact that the Love family was planning to bring a $30 million civil suit against him. Appellant maintains the civil attorneys and the Commonwealth had been in contact well before trial. Appellant claims the January 30, 2012 letter from the Commonwealth indicating that the Loves would be testifying and that they had a "potential cause of action" was misleading and did not disclose knowledge that the suit was to be filed after trial, would allege a theory of negligence and accident, and the high amount of damages sought. Appellant asserts that such information was favorable for impeachment and sentencing purposes. Counsel for appellant conceded he was aware of the potential for a lawsuit, but nevertheless he did not inquire further of the Commonwealth, or anyone else, for additional information.

-8-

> "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).
>
> Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. at 280. However, it is not necessary to demonstrate "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." A conviction must be reversed if the accused shows "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435.

Coley v. Commonwealth, 55 Va. App. 624, 631, 688 S.E.2d 288, 292 (2010) (citations omitted). There is no Brady violation where defense counsel knew about undisclosed exculpatory evidence "in sufficient time to make use of [it] at trial." Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546 (1987). Cf. Moreno v. Commonwealth, 10 Va. App. 408, 419, 392 S.E.2d 836, 843 (1990) (where accused receives information in time to use it effectively at trial, and is not otherwise able to demonstrate prejudice, he has not been deprived of fair trial).

The record fails to demonstrate that suppression of the information about the civil suit would have "undermined confidence" in the outcome of the trial. As the trial court noted in its August 15, 2012 letter opinion, the Commonwealth's statement that the family members had a "potential cause of action" should have been a "red flag," particularly since counsel was aware that the statute of limitations was "drawing nigh" and counsel knew there was a possibility of a civil lawsuit. Despite the warning, appellant made no general inquiry of the Commonwealth, or the Loves, concerning specific details about a probable lawsuit. A few simple questions would have allowed appellant to make use of the information at trial. We further note that while the Commonwealth may have had knowledge of an impending suit, the civil attorneys were not "acting on [the Commonwealth's] behalf," see Strickler, 527 U.S. at 281 (quoting Kyles v. Whitely, 514 U.S. 419, 437 (1995)), and their knowledge cannot be imputed to the Commonwealth. Nevertheless, the information appellant sought "could have been secured had appellant exercised reasonable diligence[,]" as is required of

him. Coley, 55 Va. App. at 631, 688 S.E.2d at 292. Accordingly, the Commonwealth did not violate appellant's due process rights and Brady, and the trial court did not err by refusing to grant appellant a new trial or a hearing for further investigation of a violation.

VII. Appellant claims the trial court did not adequately instruct the jury on the meaning of "malice" under Virginia law. The trial court gave the Virginia Model Jury Instruction defining malice, which stated,

> Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive, including anger, hatred or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.

Appellant's proposed Jury Instruction BB supplemented the Model Jury Instruction with the additional language that malice,

> is not confined to ill will, to any one or more particular persons, but is intended to denote an action flowing from a wicked or corrupt motive, done with an evil mind and purpose and wrongful intention, there the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and fatally bent on mischief.

The language in appellant's proposed instruction is an accurate statement of law. See Thomas v. Commonwealth, 186 Va. 131, 139, 41 S.E.2d 476, 480 (1947). However, in refusing to give appellant's Jury Instruction BB the trial court indicated its belief that the instruction was confusing saying, "What in the world does this mean?"

"'When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.'" Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008) (quoting Stockton, 227 Va. at 145, 314 S.E.2d at 384).

> Our previous decisions reflect that even if jury instructions contain accurate statements of law, a trial court does not abuse its discretion by refusing the instruction if it "is not applicable to the facts and circumstances of the case," Hatcher v. Commonwealth, 218 Va. 811, 813-14, 241 S.E.2d 756, 758 (1978), or if it "would have created confusion and would have been misleading." Hubbard v. Commonwealth, 243 Va. 1, 15, 413 S.E.2d 875, 883 (1992).

Juniper v. Commonwealth, 271 Va. 362, 431, 626 S.E.2d 383, 426 (2006).

-10-

Here, the trial court granted the Commonwealth's instruction that tracked the Virginia Model Jury Instruction and provided an accurate and sufficient definition of malice. The trial court clearly found appellant's proposed instruction to contain a confusing, or difficult to understand, definition of malice. The jury was fully and adequately instructed on the law of malice. Accordingly, the trial court did not err by refusing to grant appellant's proposed instruction with the expanded definition of malice.

VIII. Appellant contends the evidence was insufficient to support a conviction of second-degree murder in that the evidence failed to establish malice and supported a degree of homicide no greater than manslaughter. "Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished." Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 219-20 (1984). "'Implied malice exists when any *purposeful, cruel act* is committed by one individual against another without any, or without great provocation; . . . .'" Id. at 280, 322 S.E.2d at 220 (quoting Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982)).

> "In Virginia, every unlawful homicide is presumed to be murder of the second degree." Pugh, 223 Va. at 667, 292 S.E.2d at 341. . . . Second-degree murder does not require a specific intent to kill. See Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). "It is quite clear that one may slay maliciously without actually intending to kill." Ronald J. Bacigal, Criminal Offenses and Defenses 339 (2011-12). If he acts with malice, the accused need only intend "to perform the conduct" causing the victim's death. Id. at 340.
>
> Malice inheres in the "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" Canipe [v. Commonwealth], 25 Va. App. [629,] 642, 491 S.E.2d [747,] 753 [(1997)] (quoting Essex, 228 Va. at 281, 322 S.E.2d at 220).

Tizon v. Commonwealth, 60 Va. App. 1, 10-11, 723 S.E.2d 260, 264-65 (2012). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe, 25 Va. App. at 642, 491 S.E.2d at 753.

> When considering the sufficiency of the evidence on appeal to support a criminal conviction, this Court views the evidence in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352,

> 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its judgment for that of the trier of fact. Instead, the jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence.

Id. at 644, 491 S.E.2d at 754 (citations omitted).

Appellant and Love were involved in a turbulent relationship. In February of 2010, appellant physically held Love down, with his arm around her neck, to prevent her from leaving his room. Love was able to leave when an acquaintance heard her cry for help and entered the room. Appellant wrote Love a letter indicating he did not recall what he had done, but was sorry.

In late April, 2010, a few days before her death, Love confronted appellant about being with or communicating with other girls. She was described as being upset and that she was hitting appellant with her purse. The next day, Love emailed appellant apologizing for her behavior. The email exchange between appellant and Love deteriorated such that, two days before her death, appellant stated, "I should have killed you," and that they needed to talk.

On May 2, 2010, appellant was drinking alcohol throughout the day. He was observed to be intoxicated such that his speech was slurred and he urinated in public outside of a restaurant. That evening Love had also been drinking, but had returned home. She planned to go back out with her roommate, but decided to instead stay home. Love's roommate saw Love blow drying her hair in her bedroom wearing only her underwear. The roommate did not see any injuries to Love's body. When Love's roommate left at approximately 10:40 p.m., Love was asleep in her bed still wearing only her underwear.

A downstairs neighbor heard footsteps going up to Love's apartment. She later heard a "really loud" noise that she likened to something big falling or "like a slamming trunk if you really slammed it." Within ten minutes or less, the neighbor heard footsteps leaving Love's apartment and saw a male person walking away in the direction of appellant's apartment at approximately 11:50 p.m.

Love's roommate returned to the apartment at approximately 2:20 a.m. Love was in her bed with the covers over her. When the roommate pulled the covers down and moved her hair, she saw extensive injuries to Love's face. Love was lying face down in the bed with her arms fully extended along the side of her body

with her palms toward the ceiling. There was a pool of blood on the pillow. The state of the bed indicated that Love had moved little, to not at all, from that position.

Police detectives spoke with appellant at his apartment around 7:30 a.m. Appellant accompanied the detectives to the police station where he initially agreed to speak with them without the presence of a lawyer. Appellant admitted he kicked in Love's bedroom door, which left a hole in the door. He stated he kicked in the door because she would not talk to him. Appellant admitted Love was "freaked out" and "should have been screaming." Appellant admitted he shook Love, wrestled with her on the ground, grabbed her, and put his hands on her neck. Appellant admitted he saw that her nose was bleeding. Appellant admitted that just before he left he "tossed" her in the bed. Appellant claimed, however, that he had done nothing that would have killed her.

The evidence did not have to show that appellant set out to kill Love to support the second-degree murder conviction, only that he acted willfully with malice. The record has ample evidence of appellant's malice toward Love. He previously used physical force to make Love submit to his desire to "talk." He told her he should have killed her two days before he did in fact kill her. Appellant kicked in the bedroom door with sufficient force to put a hole through the door to get at Love, who had been in bed. Love's injuries were numerous, including abrasions to her eye, lips, and chin, and contusions to her head, neck, abdomen, arms and legs. She had bruises from the force with which appellant grabbed her as indicated by finger marks. The injuries alone speak to the brutal force appellant used and demonstrate a purposeful, willful, cruel series of intentional acts likely to cause great bodily harm. Appellant's behavior indicates his violent anger toward Love. The evidence supports the jury's finding that appellant acted with malice. Accordingly, the evidence was sufficient to prove appellant guilty beyond a reasonable doubt of second-degree murder.

This order is final unless, within fourteen days from the date of this order, there are further proceedings pursuant to Code § 17.1-407(d) and Rule 5A:15(a) or 5A:15A(a), as appropriate. If appellant files a demand for consideration by a three-judge panel, pursuant to those rules the demand shall include a statement identifying how this order is in error.

This Court's records reflect that Paul D. Clement, Esquire, Craig S. Cooley, Esquire, Francis McQ. Lawrence, Esquire, and Rhonda Quagliana, Esquire, are counsel of record for appellant in this matter.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *Marty K. P. Ring*

Deputy Clerk

## CERTIFICATE OF CLERK

I, Cynthia L. McCoy, Clerk of the Court of Appeals of Virginia, do hereby certify that on April 23, 2013 an appeal was awarded as described in the order to which this certificate is appended. A copy of this certificate and a copy of the order to which it is appended were this day mailed to the trial court indicated in the order and to all counsel of record.

Given under my hand this 23rd day of April, 2013.

Cynthia L. McCoy, Clerk

By: *Marty K. P. King*
Deputy Clerk