**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

GEORGE WESLEY HUGUELY V,

                           *Petitioner*,

        v.

HAROLD CLARKE, Director, Virginia
Department of Corrections

                           *Respondent*.

Civil Action No. 7:20-cv-30021-NKM-JCH

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS AND
RESPONSE TO RULE 5 ANSWER**

Jonathan P. Sheldon (VA Bar #66726)
Sheldon & Flood, PLC
10621 Jones Street, Suite 301A
Fairfax, VA 22030
(703) 691-8410
jsheldon@sfhdefense.com

Jeffrey M. Harris (VA Bar #93883)
Bryan K. Weir (VA Bar #82787)
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
bryan@consovoymccarthy.com

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT .................................................................................................................. 6

I.      Mr. Huguely Has Stated a Plausible Claim That His Due Process and Sixth
        Amendment Rights Were Violated When the Jury Consulted a Dictionary
        Regarding the Meaning of Malice. ............................................................................ 6

II.     Mr. Huguely Has Stated a Plausible Claim That His Sixth Amendment Rights
        Were Violated When He Received Ineffective Assistance of Counsel at Trial. ........ 11

        A.      Mr. Huguely's Sixth Amendment Right to Effective Assistance of
                Counsel Was Violated When Trial Counsel Violated the Rule on
                Witnesses, Thereby Causing Crucial Expert Testimony to be Excluded ....... 11

        B.      Mr. Huguely's Sixth Amendment Right to Effective Assistance of
                Counsel Was Violated When His Counsel Failed to Call Crucial
                Expert John S. Daniel, III, M.D. .................................................................... 15

III.    Mr. Huguely Has Stated a Claim That His Sixth Amendment Right to
        Counsel Was Violated When the Circuit Court Forced Him to Proceed
        in the Absence of his Retained Counsel of Choice. .................................................. 16

IV.     Mr. Huguely Has Stated a Plausible Claim That the Circuit Court Violated His
        Right to a Fair and Impartial Jury Under the Sixth Amendment. ............................... 18

        A.      The State Courts Unreasonably Applied Clearly Established Federal
                Law by Refusing to Allow the Defense to Ask Questions During Voir
                Dire That Were Directly Relevant to Jurors' Ability to Remain Impartial .... 18

        B.      Mr. Huguely's Sixth Amendment Right to an Impartial Jury Was Violated
                When the Circuit Court Refused to Strike for Cause a Juror Whose Answers
                During Voir Dire Revealed Serious Doubts about Her Impartiality .............. 19

V.      Mr. Huguely's Claims Regarding *Brady*, Individualized Sequestered *Voir Dire*,
        and the Sufficiency of the Evidence Underscore the Pervasive Flaws of the
        Trial Proceedings. ..................................................................................................... 20

VI.     The Director's Request to Summarily Dismiss the Petition Without an
        Evidentiary Hearing Should be Rejected. .................................................................. 22

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 5, 6

*Barnes v. Joyner,*
  751 F.3d 229 (4th Cir. 2014) .............................................................................. 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 5

*Blackledge v. Allison,*
  431 U.S. 63 (1977) ............................................................................................... 6

*Brooks v. Clarke,*
  2015 WL 1737993 (E.D. Va. Apr. 16, 2015) ...................................................... 5

*Conaway v. Polk,*
  453 F.3d 567 (4th Cir. 2006) ............................................................................... 5

*Connors v. United States,*
  158 U.S. 408 (1895) ........................................................................................... 19

*Dugas v. Coplan,*
  428 F.3d 317 (1st Cir. 2005) .............................................................................. 14

*Formica v. Superintendent of Cent. Va. Reg'l Jail,*
  2015 WL 5561933 (W.D. Va. Aug. 21, 2015) ..................................................... 6

*Gordon v. Braxton,*
  780 F.3d 196 (4th Cir. 2015) ............................................................................... 7

*Gray v. Zook,*
  806 F.3d 783 (4th Cir. 2015) ..................................................................... 8, 13, 24

*Marshall v. United States,*
  360 U.S. 310 (1959) ........................................................................................... 20

*McNeill v. Polk,*
  476 F.3d 206 (4th Cir. 2007) ............................................................................... 9

*Miller-El v. Cockrell,*
  537 U.S. 322 (2003) ....................................................................................... 8, 13

*Moore v. Hardee*,
  723 F.3d 488 (4th Cir. 2013) ................................................................. 8, 13

*Morris v. Fletcher*,
  2017 WL 1161888 (W.D. Va. Mar. 27, 2017) ........................................... 5

*Morris v. Slappy*,
  461 U.S. 1 (1983) .................................................................................... 17

*Powell v. Kelly*,
  531 F. Supp. 2d 695 (E.D. Va. 2008) ...................................................... 24

*Remmer v. United States*,
  347 U.S. 227 (1954) ....................................................................... 8, 9, 11

*Republican Party of N.C. v. Martin*,
  980 F.2d 943 (4th Cir. 1992) .................................................................... 5

*Riner v. Commonwealth*,
  268 Va. 296 (2004) ................................................................................. 10

*Rodriguez v. Chandler*,
  492 F.3d 863 (7th Cir. 2007) .................................................................. 18

*Rosales-Lopez v. United States*,
  451 U.S. 182 (1981) ................................................................................ 18

*Schriro v. Landrigan*,
  550 U.S. 465 (2007) ......................................................................... 11, 22

*Smith v. Brown*,
  291 Va. 260, 781 S.E.2d 744 (2016) ................................................. 22, 23

*Smith v. Dir., Va. Dep't of Corr.*,
  2016 WL 867726 (W.D. Va. Feb. 1, 2016) ............................................ 5, 6

*Stoffa v. Kiser*,
  2016 WL 4154928 (E.D. Va. July 8, 2016) .............................................. 7

*Strickland v. Washington*,
  466 U.S. 668 (1984) ............................................................................... 14

*Strong v. Johnson*,
  495 F.3d 134 (4th Cir. 2007) .................................................................. 24

*Townsend v. Sain*,
  372 U.S. 293 (1963) ......................................................................... 11, 22

*U.S. v. Henley*,
    238 F.3d 1111 (9th Cir. 2001) ................................................................. 9

*United States v. Duncan,*
    598 F.2d 839 (4th Cir. 1979) .................................................................. 9

*United States v. Gonzalez-Lopez,*
    548 U.S. 140 (2006) ............................................................................ 17

*United States v. Lancaster,*
    96 F.3d 734 (4th Cir. 1996) ................................................................. 19

*United States v. Laura,*
    607 F.2d 52 (3d Cir. 1978) .................................................................. 18

*United States v. Lawson,*
    677 F.3d 629 (4th Cir. 2012) ................................................................. 9

*United States v. White,*
    366 F.3d 291 (4th Cir. 2004) ................................................................. 6

*Walker v. Kelly,*
    589 F.3d 127 (4th Cir. 2009) .......................................................... 4, 5, 6

*Walker v. True,*
    399 F.3d 315 (4th Cir. 2005) ................................................................. 5

*Williams v. Martin,*
    618 F.2d 1021 (4th Cir. 1980) ............................................................. 15

*Wolfe v. Johnson*,
    565 F.3d 140 (4th Cir. 2009) ................................................................. 5

*Yeatts v. Murray*,
    249 Va. 285, 455 S.E.2d 18 (1995) ................................................. 22, 23

## OTHER AUTHORITIES

Rules Governing Section 2254 Cases in the United States District Courts,
    Rule 8, Advisory Committee notes ........................................................ 11

## INTRODUCTION

Mr. Huguely's §2254 Petition raises several claims—all supported by ample legal authority and plausibly alleged facts—that he is being held in custody in violation of the Constitution and laws of the United States. The Petition comprehensively explains why the state courts' adjudication of Mr. Huguely's federal constitutional claims rested on an unreasonable application of clearly established law and/or an unreasonable determination of the relevant facts.

The Director's Motion to Dismiss largely just block-quotes each of the relevant state court decisions while ignoring Mr. Huguely's arguments about why those decisions were unreasonable. The Director's arguments fail for all the reasons set forth below and in the Petition. Mr. Huguely's well-pled and well-supported allegations must be accepted as true at this stage of the proceedings, and those allegations unquestionably state plausible claims for relief under §2254.

The Director's attempts to summarily dismiss this case without an evidentiary hearing fare no better. At a minimum, Mr. Huguely has offered plausible allegations that the jury's deliberations were tainted by external influences and that his defense was severely prejudiced by trial counsel's deficient performance. The state habeas court acknowledged the seriousness of these allegations when it initially scheduled an evidentiary hearing before inexplicably cancelling the hearing and dismissing the petition. This Court should rectify that omission by denying the Director's motion to dismiss and setting this case for a hearing on each of the claims presented in the Petition.

## BACKGROUND

The Petition comprehensively sets forth the factual background and procedural history of this case, *see* Petition 5-18, which Mr. Huguely will not repeat here. But the Director's recitation

of the facts and history of the case contains several inaccurate or incomplete assertions, which are addressed in turn below:

The Director (at 18-19) suggests that there was a violent encounter between Mr. Huguely and Ms. Love on February 27, 2010 in which Mr. Huguely "strangled" her. But that is not what the evidence reflects. Trial testimony by a person who saw the encounter—which involved an altercation over text messages Ms. Love had found on Mr. Huguely's phone—said that Mr. Huguely had "one hand … around her chest and one arm around her arm." 2/9/12 Tr. 168. There was no evidence of a "strangulation." Ms. Love continued to socialize that night after the encounter with Mr. Huguely and told friends a few days later that "everything was okay, George was just being crazy." *Id.* at 169. Ms. Love at that time "didn't evidence any fear or concern about George." *Id.*

The Director (at 20) also offers extremely selective portions of the e-mail exchange between Mr. Huguely and Ms. Love on April 30, 2010. That email exchange began with Ms. Love apologizing to Mr. Huguely for the incident the previous night in which she came into his apartment, accused him of seeing other women, and hit him repeatedly with her purse. App. 4621. The exchange then devolved into accusations of infidelity and petty insults from both of them. App. 4621-24. When read in context, Mr. Huguely's statement "I should have killed you" was unbecoming and inappropriate but was plainly not a threat. Immediately after that statement, Mr. Huguely stated: "I'm still in utter disbelief at everything that has happened recently and how u handle this. I will tell you what's true and what's not true. Don't assume anything though." App. 4624. The clear import of these statements, when read in their full context, is that Mr. Huguely was upset about the status of their relationship and wanted to talk to Ms. Love in an

attempt to clear the air—not that he was in any way threatening her. App. 4624-25.[1] Mr. Huguely and Ms. Love were seen socializing and holding hands three days after that e-mail exchange and one day before her death. 2/17/12 Tr. 71-79.

The Director (at 23) cites testimony from Kenneth Clausen suggesting that something seemed "wrong" with Mr. Huguely when he returned to the apartment on the night of Ms. Love's death. But Kevin Carroll—whose testimony the Director ignores—offered a very different assessment. Carroll testified that Mr. Huguely "appeared to be affected by alcohol" and seemed "tired" but that Carroll "did not notice anything else about him that was different." 2/15/12 Tr. 69. In particular, Carroll "didn't notice anything about [Mr. Huguely's] clothes being disheveled or him having any cuts or bruises." *Id.*

The Director also ignores key details about the circumstances in which Ms. Love's roommate found her after the altercation with Mr. Huguely. The roommate (Caitlin Whiteley) returned to the apartment around 2:15 a.m. and was planning "to go wake up Yeardley," likely just to socialize. 2/8/12 Tr. 193-94. As she approached Ms. Love's room, Whiteley "[didn't] remember noticing anything" unusual. *Id.* at 194. And when Whiteley and her friend called 911 after they found Ms. Love unresponsive with no obvious injuries, they "thought it was alcohol poisoning" given that Ms. Love and her friends "had been drinking earlier." *Id.* at 232-33. The Director also incorrectly states (at 23) that Whiteley saw a "large blood stain on the pillow." Whiteley testified that she saw blood on Ms. Love's sheets and pillow but did not characterize this as a "large" stain. *Id.* at 196-97.

---

[1] Seven months after the trial, lead prosecutor Dave Chapman gave an interview to NBC 29 Charlottesville in which he agreed with this version of the facts, stating that "there is nothing in the evidence to suggest to me that he entered with the specific intent of taking her life."

Finally, the Director's description (at 24-25) of Ms. Love's injuries is also selective and incomplete. The Director asserts that there were a "minimum of eighteen nonfatal contusions" to Ms. Love's body. But the medical examiner conceded that a number of those contusions, especially the ones on Ms. Love's legs "[l]ooked a little bit older" and could have happened earlier, 2/13/12 Tr. 231-32, potentially from playing competitive varsity lacrosse. The medical examiner further acknowledged that the presence or absence of fractures "is an important element" in determining "the degree of force applied," and "fractures are usually more force than non-fractures." *Id.* at 217. Yet Ms. Love had no fractures at all—not to her skull, face, eye socket, nose, or hyoid bone in her neck—and no damage to her trachea and larynx (which would have indicated force applied to her neck). *Id.* at 211-12, 217, 224. Nor did Ms. Love have the types of marks that would have indicated "forceful grasping by another person" or a "big pattern of injuries suggesting of significant grabbing." *Id.* at 227. The medical examiner further conceded that it would "not take a lot of pressure" to cause some of the hemorrhaging that was observed on Ms. Love. *Id.* at 225.

The Director also ignores all of the evidence showing that nothing in Ms. Love's room suggested that a violent struggle or beating had occurred, and that Ms. Love's downstairs neighbor did not hear or observe anything unusual other than one loud noise near the door. *See* Petition at 8-9 (collecting evidence). And the video of Mr. Huguely's interview with the police reflects that he was genuinely shocked and horrified when he learned that Ms. Love was dead—a reaction that was entirely inconsistent with a violent encounter that could have led to Ms. Love's death. Ex. 26.

## STANDARD OF REVIEW

"In proceedings under §2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). A motion to dismiss "tests the legal sufficiency of the petition, requiring the

federal habeas court to 'assume all facts pleaded by the §2254 petitioner to be true.'" *Id.* at 139 (quoting *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009)); *see also Morris v. Fletcher*, 2017 WL 1161888, at *1 (W.D. Va. Mar. 27, 2017). "The court must consider 'the face of the petition and any attached exhibits' in determining whether a section 2254 petition states a claim for relief." *Brooks v. Clarke*, 2015 WL 1737993, at *3 (E.D. Va. Apr. 16, 2015) (quoting *Walker*, 589 F.3d at 138).

For purposes of a motion to dismiss, this Court must accept Mr. Huguely's allegations as true. *See Wolfe*, 565 F.3d at 169 (district court erred where it "failed to accept as true the allegations of [the petitioner's] Amended Petition" and "prematurely rejected the credence and relevance of" the petitioner's affidavits); *Conaway v. Polk*, 453 F.3d 567, 589 (4th Cir. 2006) (vacating district court decision that "erred in ruling that Conaway had not alleged facts sufficient to entitle him to relief'); *Walker v. True*, 399 F.3d 315, 319-20 (4th Cir. 2005) (vacating district court ruling that failed to accept as true habeas petition's allegations, because "whether Walker has 'stated a claim' in his petition depends on whether he has set forth facts that, if true, would demonstrate" entitlement to relief).

As with any motion to dismiss, the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), applies to this motion. *See Smith v. Dir., Va. Dep't of Corr.*, 2016 WL 867726, at *1 (W.D. Va. Feb. 1, 2016), *report and recommendation adopted*, 2016 WL 950964 (W.D. Va. Mar. 4, 2016). "[I]mportantly," a motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, 'the petition and any attached exhibits,' R. Gov. §2254 Cases in U.S. Dist. Cts., Rule 4, 'must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord* [*Walker*], 589 F.3d at 139." *Formica v. Superintendent of Cent. Va. Reg'l Jail*, 2015 WL 5561933, at *1 (W.D. Va. Aug. 21, 2015), *report and recommendation adopted*, 2015 WL 5561952 (W.D. Va. Sept. 21, 2015). The "plausibility" standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that the defendant is being held in custody in violation of the Constitution and laws of the United States. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004) ("A court cannot *summarily* dismiss a [habeas] petitioner's allegations simply because the petitioner has yet to prove them by a preponderance of the evidence.").

The determination of whether a §2254 petition satisfies this standard is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Smith*, 2016 WL 867726, at *1 (quoting *Iqbal*, 556 U.S. at 679). "Summary dismissal is not appropriate when the prisoner alleges facts that, if accepted as true and not 'directly contradicted' by the record, would entitle him to federal habeas relief on a particular claim." *Id.* (citations omitted).

## ARGUMENT

**I.     Mr. Huguely Has Stated a Plausible Claim That His Due Process and Sixth Amendment Rights Were Violated When the Jury Consulted a Dictionary Regarding the Meaning of Malice.**

As Mr. Huguely explained at length, the state habeas court's decision rested on an unreasonable application of clearly established federal law and an unreasonable determination of the facts to the extent the court summarily dismissed his claim that the jury impermissibly relied on a dictionary during deliberations. *See* Petition 20-27. In response, the Director (at 28-33) merely block-quotes the state habeas court's decision. But the Director entirely fails to address the serious

flaws in the habeas court's reasoning that should have entitled Mr. Huguely to habeas relief or, at a minimum, an evidentiary hearing.

Most notably, the Director—like the state habeas court—does not even *acknowledge* the fact that Juror 42 submitted multiple declarations in the case. The state habeas court relied heavily on a declaration that Juror 42 provided to the Director, which the court cited for the proposition that Juror 42 had "no recollection of any specifics or details" such as whether the jury was provided a dictionary or instead a "single sheet of paper." Letter Ruling, ECF No. 29-12 at 2. But both the Director and the state habeas court entirely ignore Juror 42's reply declaration, in which she stated that when she signed the declaration she gave to the Director, she was "in a rush," did not read it "thoroughly," and "did not review the statement line by line like I had done with the defense's statement." Huguely's Redacted Appendix, ECF No. 24, Exhibit B. In that reply declaration, Juror 42 stated unequivocally that "[i]t was a dictionary" the jury used during deliberations, and that "[a] juror read the definition of malice out loud from the dictionary." *Id.* Those statements further corroborated Juror 42's opening declaration, which stated that "[t]he bailiff brought us a dictionary and we looked up the word 'malice,'" and "[t]his helped in deciding if there was malice and whether it had been shown in these charges." *Id.*, Exhibit A, ¶7.

The state habeas court's decision on this claim was "owed no deference" given that the court entirely "ignor[ed]" Juror 42's reply declaration and refused to conduct a hearing "to develop the record and resolve" these questions. *Gordon v. Braxton*, 780 F.3d 196, 203-04 (4th Cir. 2015). The Director (at 55) argues that *de novo* review is not required "'every time the state court declines to hold a hearing on a defendant's evidentiary proffer.'" (quoting *Stoffa v. Kiser*, 2016 WL 4154928 at *7 (E.D. Va. July 8, 2016)). But Mr. Huguely has never argued otherwise. *Gordon* makes clear that *de novo* review applies when the state habeas court "ignor[es]" critical evidence

without attempting to develop the record and resolve the disputed issue, which is exactly what happened here.

In all events, regardless of the standard of review, the state habeas court's decision rested on an unreasonable determination of the facts. *See*, *e.g.*, *Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003) (noting that "the state court [] had before it, and apparently ignored" testimony favorable to the defendant); *Gray v. Zook*, 806 F.3d 783, 791 (4th Cir. 2015) ("When a state court apparently ignores a petitioner's properly presented evidence, its fact-finding process may lead to unreasonable determinations of fact under §2254(d)(2)."); *Moore v. Hardee*, 723 F.3d 488, 499 (4th Cir. 2013) (same). As noted, the state habeas court simply ignored Juror 42's reply declaration even though that declaration clarified several of the issues that the habeas court claimed to be ambiguities in Juror 42's account. And the other jurors' declarations hardly deserved the weight the habeas court attached to them. Nearly all of the other jurors merely stated that they did not "remember" or "recall" a dictionary being used. *See* Letter Ruling, ECF No. 29-12 at 3-4. Just *two* other jurors stated that "nobody brought a dictionary into the jury deliberations" and "[n]one of the jurors used a dictionary during deliberations." *Id.* This hardly gives rise to the state habeas court's inference that "it would appear much more likely that the one juror is mistaken and has confused something else with a dictionary." *Id.* at 4.

The state habeas court further suggested that Mr. Huguely did not suffer prejudice because there was "insufficient evidence … of what if anything was read." *Id.* But that reasoning is flawed several times over. First, the Supreme Court has held that there is a *presumption* of prejudice based on any external influences "not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). Once such an external influence is shown, "the burden rests heavily upon the Government

to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* In *Remmer*, for example, the court did "not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless." *Id.* The Supreme Court thus vacated the judgment and "remand[ed] the case to the District Court with directions to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial." *Id.* at 230. That is precisely what should have happened here— the state habeas court should have held an evidentiary hearing to determine "whether the incident complained of was harmful to the petitioner."

The state habeas court sought to distinguish *Remmer* on the ground that the presumption of prejudice applied only to external "evidence"—such as a "newspaper, almanac, viewing a crime scene, or photos"—rather than a dictionary. Letter Ruling, ECF No. 29-12 at 4-5. But *Remmer* itself contains no such qualification; indeed, *Remmer* did not involve any of the types of evidence identified by the state habeas court and instead involved contact between an unknown person and a juror.

Even more to the point, the Fourth Circuit has held that the *Remmer* presumption "is applicable when a juror uses a dictionary or similar resource to research the definition of a material word or term at issue in a pending case." *United States v. Lawson*, 677 F.3d 629, 645 (4th Cir. 2012); *see also McNeill v. Polk,* 476 F.3d 206, 226 (4th Cir. 2007) (use of dictionary an impermissible external influence); *United States v. Duncan,* 598 F.2d 839, 866 (4th Cir. 1979) (same). Against this clear Fourth Circuit precedent, the state habeas court merely cited out-of-circuit precedent that addressed dictionaries only in passing in *dicta, see U.S. v. Henley*, 238 F.3d 1111, 1115-16 (9th Cir. 2001), and a Virginia state court case that did not address dictionaries *at*

9

*all*, *see Riner v. Commonwealth*, 268 Va. 296, 316 (2004). Those decisions provide no basis to avoid application of the *Remmer* presumption.

Even assuming—contrary to *Remmer*—that no presumption of prejudice applied, the state habeas court still engaged in an unreasonable determination of the facts in finding no prejudice. Whether Mr. Huguely acted with malice was the single most important issue before the jury, as this was the difference between manslaughter and second-degree murder. *See* Petition at 21-24. Not only was this the critical issue, but the jury was clearly confused about the meaning of malice, sending multiple notes to the trial judge requesting clarification of the jury instructions. 2/22/12 Tr. 22-31, 34-36. And Juror 42's opening declaration expressly stated that the jury *used* the dictionary to aid in its deliberations:  "[t]he bailiff brought us a dictionary and we looked up the word 'malice,'" and "[t]his *helped in deciding if there was malice* and whether it had been shown in these charges." Huguely's Redacted Appendix, ECF No. 24, Exhibit A, ¶7 (emphasis added). Yet the state habeas court simply ignored all of this in reaching its entirely unreasonable determination that no prejudice occurred.

It is also irrelevant that the trial judge had instructed the jurors to make their ruling based only on the evidence and law given to them in the courtroom. Letter Ruling, ECF No. 29-12 at 5. The use of the dictionary took place *during deliberations*, after the instructions were given. If this incident occurred as Juror 42 described, it would have shown that at least some jurors were *violating* the trial judge's instructions. It thus hardly advances the Director's position to point to those instructions as a basis for cutting off any further inquiry into the serious allegations of an external influence on the jury's deliberations.

Finally, at a minimum, the credible evidence proffered by Mr. Huguely—which came directly from one of the jurors who voted to convict him—should warrant an evidentiary hearing

to conclusively determine whether the jury's deliberations were tainted by extraneous sources. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *see also Townsend*, 372 U.S. at 313; *Barnes v. Joyner*, 751 F.3d 229, 242 (4th Cir. 2014) (credible allegation of external influence on the jury establishes "not only a presumption of prejudice, but also a *defendant's entitlement to an evidentiary hearing ….*").

Here, if Mr. Huguely were able to conclusively prove that the jury had consulted a dictionary, this unquestionably would have entitled him to habeas relief. Moreover, because the state habeas court refused to hold a hearing on this issue, Mr. Huguely "did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding." Rules Governing Section 2254 Cases in the United States District Courts, Rule 8, Advisory Committee notes (citing *Townsend*). The state habeas court initially scheduled an evidentiary hearing on this claim, but then inexplicably cancelled it. The court's dismissal of this claim resulted in a decision that involved an unreasonable application of clearly established federal law as set forth in *Remmer* and rested on an unreasonable determination of the facts. Mr. Huguely has stated a plausible claim for relief on this ground, and the Director's motion to dismiss should accordingly be denied.

## II. Mr. Huguely Has Stated a Plausible Claim That His Sixth Amendment Rights Were Violated When He Received Ineffective Assistance of Counsel at Trial.

### A. <u>Mr. Huguely's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When Trial Counsel Violated the Rule on Witnesses, Thereby Causing Crucial Expert Testimony to be Excluded</u>

Mr. Huguely's trial counsel provided constitutionally inadequate representation when they violated the rule on witnesses, which resulted in the exclusion of vital expert testimony from Dr.

11

Uscinski on reperfusion. *See* Petition 28-33. The Director does not dispute the habeas court's finding that trial counsel's "violation of the rule on witnesses … was deficient performance." Letter Ruling, Dkt. No. 29-12 at 13; *see also* 2/18/12 Tr. 44-45 (trial court acknowledging that "this is an incredibly important issue for the parties" and noting that "[t]his is very troublesome and I wouldn't have expected this from counsel and I'm incredibly disappointed with it").[2] But the Director asserts (at 33-37) that the habeas court's finding of no prejudice was not an unreasonable application of *Strickland*.

The Director again just block-quotes the state court's decision and does not even attempt to respond to Mr. Huguely's extensive arguments about why the state habeas court's legal and factual determinations regarding prejudice were unreasonable. First, Dr. Uscinski's testimony on reperfusion would not have been cumulative of Dr. Leestma's testimony. *See* Petition 30-31. Reperfusion was a critical issue at trial because it was highly relevant to the cause of Ms. Love's death. Given that at least *five* prosecution experts testified about reperfusion from a variety of different medical backgrounds—*see* 2/14/12 Tr. 68-83, 100-05, 156-58, 163-76; 2/9/12 Tr. 72-92; 2/10/12 Tr. 40-41, 48-49—it was critical for the defense to have a forceful and comprehensive response to this evidence. Indeed, it was not just the trial judge who found this issue "incredibly important," 2/18/12 Tr. 44-45. In her emails that violated the rule on witnesses, trial counsel herself emphasized that "*the jury is waiting to hear from someone with the right expertise* that CPR creates enough blood pressure in the body to sufficiently perfuse the brain with blood so as to potentially

---

[2] The key portions of the trial transcript regarding the exclusion of Dr. Uscinski's testimony are reproduced in the Public Appendix to the Petition, ECF No. 1-2. The exhibits introduced at trial during the hearing on whether to exclude Dr. Uscinski's testimony (App. 4753-58) are reproduced as Exhibit C in Huguely's Sealed Appendix, ECF No. 6.

cause injury," and "we don't have a cardiologist or ER guy, *so one of you will have to talk about this.*" App. 4753 (emphasis added).

Yet trial counsel's deficient performance resulted in the exclusion of Dr. Uscinski—a "well-respected practicing neurosurgeon," who was specifically retained to counter the prosecution's theory of Ms. Love's brain injuries. *See* Quagliana Affidavit ¶11, ECF No. 29-11. As a clinical neurosurgeon who actually treats patients, Dr. Uscinski would have added a critical perspective on these issues that went beyond Dr. Leestma's expertise, which was limited to determining the cause of death. Indeed, the prosecution offered testimony about reperfusion from a practitioner—Dr. William Brady, an expert in CPR and emergency medical services, *see* 2/9/12 Tr. 80-92—so there was clearly value to add in offering such evidence from a clinical perspective. In closing, moreover, the prosecution sought to draw attention to the limited reperfusion evidence offered by the defense, asserting that "[t]here's no medical evidence supporting the theory that intraparenchymal, petechial hemorrhages are caused by anything else than trauma." 2/18/12 Tr. 179.

Moreover, the Director—like the state habeas court—has no response to the critical fact that trial counsel promised to present the jury with the reperfusion defense, 2/8/12 Tr. 59-60, and then, after getting Dr. Uscinski's testimony excluded, inexplicably *told the jury that Dr. Uscinski disagreed with Dr. Leestma on this issue,* 2/18/12 Tr. 226. Defense counsel severely discredited their own expert witness by telling the jury that Dr. Leestma "holds the opinion that the blood, and *this is a different [sic] than Dr. Uscinski holds*, but that the blood in the lower brain/upper brain was the result of the reperfusion." *Id.* (emphasis added). The jury was thus left to conclude that Dr. Uscinski was silent on reperfusion because he thought Dr. Leestma was wrong, thereby undermining the defense's entire argument on this critical issue and discrediting the only defense

witness to testify on this issue. Yet the state habeas court simply ignored all of this evidence about the severe prejudice resulting from trial counsel's deficient performance. Ignoring material evidence offered by the petitioner necessarily constitutes an unreasonable determination of the facts. *See Miller-El*, 537 U.S. at 346; *Gray*, 806 F.3d at 791; *Moore*, 723 F.3d at 499.

Mr. Huguely has plausibly alleged that the state habeas court's dismissal of this claim rested on a decision that was an unreasonable application of clearly established federal law regarding the right to effective assistance of counsel and an unreasonable determination of the facts in light of the evidence in the record. Trial counsel's deficient performance led to the exclusion of critical expert testimony that was needed to rebut the testimony of the prosecution's five medical experts. The habeas court also failed to acknowledge, let alone analyze, trial counsel's incorrect and severely prejudicial statement to the jury that Dr. Uscinski disagreed with Dr. Leestma about the reperfusion evidence. And trial counsel's deficient performance was especially harmful to Mr. Huguely's defense given that this was a "close case," in which "the failure of defense counsel to present certain evidence or effectively challenge the state's evidence on important issues can be particularly prejudicial." *Dugas v. Coplan*, 428 F.3d 317, 335-36 (1st Cir. 2005); *see also Strickland v. Washington*, 466 U.S. 668, 696 (1984) ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Even the trial court acknowledged that "this is an incredibly important issue for the parties" and "[t]his is very troublesome and I wouldn't have expected this from counsel and I'm incredibly disappointed with it." 2/18/12 Tr. 44-45.

In sum, there is surely a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. At a minimum, this Court should order a hearing to comprehensively probe the nature of the excluded

testimony and the impact that it had on the defense's ability to respond to the prosecution's five

medical experts who testified about reperfusion.

**B.      Mr. Huguely's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When His Counsel Failed to Call Crucial Expert John S. Daniel, III, M.D.**

Mr. Huguely has also stated a claim that trial counsel performed deficiently by failing to

call Dr. John S. Daniel to testify as an expert regarding the cause of Ms. Love's death, thereby

resulting in significant additional prejudice to Mr. Huguely's defense. *See* Petition 33-37; *Williams*

*v. Martin*, 618 F.2d 1021, 1025-26 (4th Cir. 1980) (recognizing unique need for expert testimony

where cause of death is "an essential element of the state's case"). The Director's motion to dismiss

offers nothing beyond the flawed reasoning of the state habeas court.

Mr. Huguely has already addressed the Director's assertion that Dr. Daniel's testimony

would have been cumulative. *See* Petition 34-35. Trial counsel had planned to have Dr. Daniel

testify as the last medical expert, to give "an overview of all the forensic medical information to

assist in tying the evidence together into a single coherent theory." *See* Daniel Declaration ¶13,

ECF No. 1-2, Exhibit A. Specifically, Dr. Daniel intended to testify that Ms. Love died of asphyxia

rather than blunt force trauma, that bleeding on her brain was caused by reperfusion from CPR,

and that there were significant problems with the medical examiner's analysis. *Id.* at ¶¶6-14. Dr.

Daniel would have provided critical missing ingredients in support of the primary defense theory,

while also supporting the other favorable evidence admitted at trial, particularly, Dr. Leetsma's

limited testimony on reperfusion. *See id.* at ¶¶5-16 (discussing proposed testimony); 12/15/10 Tr.

43-53 (Daniel's testimony at pretrial hearing regarding cause of death and in support of the

reperfusion theory); 12/15/10 Tr. 6-7 (trial counsel discussing important testimony that Dr. Daniel

planned to offer). As a former medical examiner himself, Dr. Daniel was also ideally situated to

respond to the prosecution's medical examiner, Dr. Gormley, by arguing that Gormley failed to

"recognize or acknowledge or consider the significant mismatch between the catastrophic lethal outcome and the extremely limited volume and distribution of intracranial bleeding." Daniel Decl. ¶9.

Like the state habeas court, the Director argues (at 37-39 & n.6) that trial counsel made a "strategic" decision not to call Dr. Daniel. But the record flatly contradicts that *post hoc* excuse for trial counsel's deficient performance. *See* Petition 35-36. Most notably, all of counsel's so-called "strategic" reasons for not calling Dr. Daniel—such as his level of compensation or his past employment at a medical examiner's office—were known to counsel in advance of trial, yet they still treated Dr. Daniel as subject to the rule on witnesses and excluded him from trial, and clearly planned to call him to testify.

The real reason why trial counsel likely declined to call Dr. Daniel is that he was also copied on the emails that violated the rule on witnesses, *see* Trial Exhibits from Uscinski Hearing (Exhibit C in Huguely's Sealed Appendix, ECF. No. 6), and thus his testimony would have been excluded for the same reason as Dr. Uscinski's. But that only underscores the severe prejudice resulting from trial counsel's violation of the rule on witnesses. In light of trial counsel's own actions before and during trial—and Dr. Daniel's affidavit attesting that he was expecting to testify—trial counsel's bald invocation of "strategic" or "tactical" choices provides no basis to summarily dismiss Mr. Huguely's Sixth Amendment claim without granting a hearing.

### III.   Mr. Huguely Has Stated a Claim That His Sixth Amendment Right to Counsel Was Violated When the Circuit Court Forced Him to Proceed in the Absence of his Retained Counsel of Choice.

At a critical juncture in the trial, Mr. Huguely was forced to proceed without his chosen counsel, hampering his ability to mount an effective defense and violating his rights under the Sixth Amendment. *See* Petition 40-46. The Director yet again provides no independent analysis of

the issue, opting to repeat the Virginia Court of Appeals' decision along with a conclusory paragraph that merely restates the legal standard. The Director has no response to Mr. Huguely's arguments about why that holding rested on an unreasonable application of clearly established law and unreasonable determination of the facts.

After an unfortunate turn of events in which one of Mr. Huguely's two retained attorneys—who were equal partners in his defense—became too ill to attend trial, Mr. Huguely personally objected "to proceeding at all until he has his full defense team." 2/17/12 Tr. 8-9. The circuit court nonetheless overruled this objection, asserting that "this case is going forward this morning with these witnesses." *Id.* at 9. In doing so, the court demonstrated an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). And the court flouted the Supreme Court's teaching that a critical component of the Sixth Amendment right is the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

The Director does nothing to rehabilitate the Court of Appeals' unreasonable application of federal law. As Mr. Huguely explained, *see* Petition 42-45, the Court of Appeals insisted upon a showing of prejudice to establish a violation of the Sixth Amendment right to counsel-of-choice even though the Supreme Court has squarely held that "erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error.'" *Gonzalez-Lopez*, 548 U.S. at 150. The Court of Appeals then compounded that error by holding that a counsel-of-choice violation can be cured as long as the defendant is represented by *any* lawyer. Once again, however, the Supreme Court has rejected that exact argument, holding that such a contention is based on a "misunderstanding of

the nature of the right to counsel of choice" and "confus[es] … this right with the right to *effective* assistance of counsel." *Id.* at 151 n.5 (emphasis added). Neither the Court of Appeals nor the Director even acknowledged, much less attempted to distinguish, the authority cited by Mr. Huguely holding that the right to counsel of choice is fully implicated in a scenario where a defendant with two retained lawyers is "allowed to use the services of only one." *Rodriguez v. Chandler*, 492 F.3d 863, 865 (7th Cir. 2007); *see also United States v. Laura*, 607 F.2d 52, 58 (3d Cir. 1978).

In sum, Mr. Huguely has stated a plausible claim that, under these circumstances, the refusal to grant a short continuance to protect his right to counsel of choice rested on a decision that involves an unreasonable application of clearly established federal law and an unreasonable determination of the facts. The Director's motion to dismiss adds nothing beyond the flawed reasoning of the Court of Appeals and should be denied.

**IV.   Mr. Huguely Has Stated a Plausible Claim That the Circuit Court Violated His Right to a Fair and Impartial Jury Under the Sixth Amendment.**

**A.   The State Courts Unreasonably Applied Clearly Established Federal Law by Refusing to Allow the Defense to Ask Questions During Voir Dire That Were Directly Relevant to Jurors' Ability to Remain Impartial**

The Virginia Court of Appeals issued a decision that rested on an unreasonable application of clearly established federal law when it affirmed the trial court's decision barring Mr. Huguely from asking potential jurors about whether they could neutrally consider evidence that portrayed Ms. Love in an unfavorable light. *See* Petition 50-52. It is clearly established by Supreme Court precedent that *voir dire* "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored" and that a "lack of adequate *voir dire* impairs the defendant's right to exercise" his peremptory challenges. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). A court abuses its discretion if *voir dire* does not provide "'a

reasonable assurance that prejudice would be discovered if present.'" *United States v. Lancaster*, 96 F.3d 734, 740 (4th Cir. 1996) (*en banc*).

That is precisely what happened here. Due to the extremely sensitive issues posed by this case, the defense wanted to be certain that potential jurors could fairly and impartially consider unfavorable evidence about Ms. Love, including evidence about her heavy alcohol use and her tumultuous on-and-off relationship with Mr. Huguely. Any juror that could not consider this evidence impartially would surely have either been struck for cause or struck through a peremptory challenge. The circuit court itself acknowledged the importance of this question when it struck a potential juror based on the response to this very question. Feb. 6-8 Tr. 375-76.

The state habeas court and the Director (at 49-50) viewed this issue as merely one committed to the discretion of the trial court. But the cases cited above make clear that this issue also has constitutional dimensions that go to the heart of what it means to receive a fair trial. It is an ancient principle of trial by jury that "a suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried." *Connors v. United States*, 158 U.S. 408, 413 (1895). Mr. Huguely was deprived of the opportunity to test for such "bias, opinion, or prejudice" among prospective jurors, and the state habeas court's holding to the contrary rested on an unreasonable application of federal law.

**B.**    **Mr. Huguely's Sixth Amendment Right to an Impartial Jury Was Violated When the Circuit Court Refused to Strike for Cause a Juror Whose Answers During Voir Dire Revealed Serious Doubts about Her Impartiality**

The Court of Appeals reached a decision that involved an unreasonable application of federal law and unreasonable determination of the facts when it rejected Mr. Huguely's constitutional challenge to the seating of Juror 211, who had multiple personal connections to this

case that should have been disqualifying. *See* Petition 52-53. Juror 211 was a professor at the University of Virginia who taught a close friend of Ms. Love and had to make special arrangements for this student's final exam so that she could attend Ms. Love's funeral. Feb. 6-8 Tr. 268-75. Juror 211 had also read "memos" from the University about the case and Ms. Love, and she remembered hearing that there was a "break in" and "blunt trauma." *Id.* at 268-69, 274.

In defending Juror 211's participation in this case, the Director (at 51-53) relies primarily on this juror's self-assessment that she could remain impartial. But the Director does not respond to the federal cases cited by Mr. Huguely holding that such a self-assessment is not enough. In *Marshall v. United States*, 360 U.S. 310, 312 (1959), the Supreme Court held that a new trial may be warranted where a juror has been exposed to outside information about a case, such as a prejudicial news article, even where the jurors insisted that they "would not be influenced" by it. Here, however, Juror 211 was allowed to sit on the case even though she had read "memos" from the University that purported to describe the events in question. And the likelihood of prejudice was especially high given that the President of the University had given public speeches in which he made demonstrably false statements about the case, such as the suggestion that Ms. Love had been "attacked and beaten" and "thrown against [the] wall[]." R.205.

## V.    Mr. Huguely's Claims Regarding *Brady*, Individualized Sequestered *Voir Dire*, and the Sufficiency of the Evidence Underscore the Pervasive Flaws of the Trial Proceedings.

The Director argues (at 8-10) that three of Mr. Huguely's claims—the *Brady* violation, the circuit court's refusal to order individualized, sequestered *voir dire*, and the insufficiency of the evidence—are not properly before this Court because, although Mr. Huguely raised those claims on direct appeal before the Court of Appeals, he did not subsequently seek discretionary review in the Virginia Supreme Court.

20

Even if this Court does not consider those claims on the merits, they nonetheless provide important context about the fundamentally skewed and unfair proceedings in the circuit court. The *Brady* claim shows that *even the Love family* argued in their civil suit that Ms. Love's death was the result of an "accident" (*i.e.*, negligence) rather than any *intentional* act by Mr. Huguely. R.887. That theory is diametrically inconsistent with the jury's verdict in the criminal case, which found that Mr. Huguely acted with "malice" and could thus be convicted of second-degree murder. Regardless of whether the prosecution had a *Brady* obligation to disclose the existence of the civil suit to Mr. Huguely's lawyers, it is highly relevant that the Love family was willing to pursue civil claims that contradicted the prosecution's theory in the criminal case.

The individualized *voir dire* claim also provides important context about the atmosphere in Charlottesville at the time of Mr. Huguely's trial. *See* Petition 10-11, 47-50. From the day of Mr. Huguely's arrest, Charlottesville was flooded with sensationalist, inflammatory, and false information about this case. Under those circumstances, it was especially imperative that the trial court take all conceivable steps to ensure that the jury issued a verdict based on the facts and the law rather than the sensationalist press coverage. Instead, however, the circuit court refused to require individualized *voir dire*, refused to allow the defense to ask critical questions about jurors' ability to remain impartial, and refused to strike a juror with close professional connections to this case. The result was a flawed proceeding that failed to provide the fundamental guarantee of fairness that Mr. Huguely would be judged based on the actual facts and testimony rather than the inaccurate press coverage that surrounded this case from day one.

Finally, Mr. Huguely's insufficiency of the evidence claim underscores that—again, contrary to the press coverage of this case—there were significant holes in the prosecution's factual and expert presentation. *See* Petition 53-56. And Mr. Huguely offered abundant evidence showing

that, although he briefly wrested with Ms. Love on the floor, he never applied a degree of force likely to cause serious injury. *Id.* at 55. Under these circumstances, the deficient performance of Mr. Huguely's trial counsel was especially likely to lead to prejudice. When the underlying evidence is close and hotly contested, counsel's inexcusable mistakes in tainting and failing to develop expert medical testimony were much more likely to have an impact on the jury's verdict.

In sum, regardless of whether this Court finds these claims to be defaulted, the facts underlying these claims remain highly pertinent to Mr. Huguely's other remaining claims (which even the Director concedes are timely and fully exhausted).

## VI.   The Director's Request to Summarily Dismiss the Petition Without an Evidentiary Hearing Should be Rejected.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474; *see also Townsend*, 372 U.S. at 313. That is plainly the case here. Mr. Huguely has offered credible evidence of external influence from a juror who actually participated in reaching the verdict. And he has offered abundant facts from the trial record and state habeas record showing that the defense was severely prejudiced when trial counsel's deficient performance resulted in the jury never seeing critical medical evidence—evidence that was especially important given that the cause of death was central to the prosecution's whole theory of the case. The Director nonetheless argues (at 16-17, 54-57) that this Petition should be summarily denied without even conducting a hearing, but the cases the Director cites are inapposite.

First, the Director (at 16-17) points to two cases from the Virginia Supreme Court—*Yeatts v. Murray*, 249 Va. 285, 289, 455 S.E.2d 18, 21 (1995) and *Smith v. Brown*, 291 Va. 260, 264, 781 S.E.2d 744, 747 (2016)—to assert that "a habeas trial court is entitled to 'minimize the burdens'

of the proceeding by employing 'simplifying procedures' such as the use of affidavits from trial counsel or other witnesses as well as dismissing a habeas petition without an evidentiary hearing. But this is a §2254 petition, and those cases have no bearing on whether Mr. Huguely is entitled to a hearing in a federal habeas proceeding. Indeed, in *Yeatts*, the court was specifically interpreting a Virginia statute in determining whether a hearing was warranted. *See Yeatts*, 249 Va. at 289 ("Code § 8.01–654(B)(4) permits the habeas court to adjudicate a petitioner's claims based upon the trial record.").

Even if Virginia cases were relevant to the federal standard for granting an evidentiary hearing, *Smith* supports Mr. Huguely's position. In *Smith*, the court actually *granted* an evidentiary hearing to the petitioner in circumstances like those presented here: the petitioner "proffered a specific and valid reason why her petition should not be summarily dismissed," namely, that her counsel had not accurately communicated her charges to her. *Smith*, 291 Va. at 265-66. And "nothing in the present record" clarified factual questions that needed to be answered to know whether she had received ineffective assistance. *Id.* at 266. "Under th[o]se circumstances, the court should have received additional evidence beyond the recorded matters." *Id.* (citations omitted). Just so here. Mr. Huguely's Petition sets forth a "specific and valid reason" why his claims should at a minimum receive a hearing: he has offered credible evidence that the jury deliberations were tainted by outside influences, and that his defense was severely prejudiced by his trial counsel's deficient performance that resulted in the jury never seeing critical expert testimony.

The Director's federal cases (at 17, 54-56) regarding the standard for an evidentiary hearing are no more helpful to his position. For instance, *Strong v. Johnson* involved a credibility determination as between two affidavits—that of the defendant and that of his counsel—regarding whether counsel's failure to file an appeal had been requested by the defendant. 495 F.3d 134,

23

138-39 (4th Cir. 2007). The Fourth Circuit held that the district court had not abused its discretion by deciding the issue without an evidentiary hearing—but only after noting significant differences in detail and substance between the affidavits. The defendant's affidavit "stated only that 'I asked [my lawyer] to appeal, but he refused after leading me to believe that he would do so,'" with "*no further details ... [or] any supporting documentation*." *Id.* at 140 (emphasis added). His counsel's affidavit, on the other hand, "explained in detail how he and [the defendant] came to agree that no appeal would be pursued." *Id.* The court concluded that "[b]ecause these two written (and sworn) statements were the *only* evidence that had been properly submitted to the Supreme Court, it was not unreasonable for the court to make a credibility determination based on the two statements." *Id.* At most, *Strong* stands for the proposition that "[c]hoosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events." *Id.* at 139.

The Director's citation (at 17, 56) to *Gray*, 806 F.3d at 792, does little more to bolster his case. Like *Strong*, the court in *Gray* explained that the defendant had offered only "conclusory" allegations as opposed to the "'detailed account of events'" offered by the warden that contradicted the defendant's allegations. *Id.* at 792. The primary evidence offered by the defendant was an affidavit from a defense investigator who merely offered a "retelling of [the defendant's] own account." *Id.* at 793. The Fourth Circuit found that this "bare, self-serving allegation" to be insufficient to justify a hearing. *Id.*

Finally, the Director (at 56-57) cites *Powell v. Kelly*, which held in a footnote that the defendant was not entitled to a hearing because he "would not be entitled to relief even if he proved the underlying facts of his claim." 531 F. Supp. 2d 695, 729 n.35 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009). The defendant argued that he was entitled to a hearing over whether

24

medications he was given at trial had affected his behavior. But the defendant offered no evidence that "he was involuntarily or forcibly medicated" or otherwise objected to taking those medications. *Id.* Thus, the alleged factual issue was ultimately immaterial to whether the defendant was entitled to relief. Here, however, even the Director does not dispute that Mr. Huguely would be entitled to relief if he is able to prove at a hearing that Juror 42's description of external influence is correct and that his defense was prejudiced by trial counsel's deficient performance with respect to critical medical evidence.

### CONCLUSION

Mr. Huguely respectfully requests that this Court deny the Director's motion to dismiss and grant Mr. Huguely an evidentiary hearing and the other relief requested in his Petition for Writ of Habeas Corpus.

Respectfully submitted,

*/s/ Jeffrey M. Harris*

Jeffrey M. Harris (VA Bar #93883)
Bryan K. Weir (VA Bar #82787)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
bryan@consovoymccarthy.com

Jonathan P. Sheldon (VA Bar #66726)
Sheldon & Flood, PLC
10621 Jones Street, Suite 301A
Fairfax, VA 22030
(703) 691-8410
jsheldon@sfhdefense.com

Dated:  August 28, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed on August 28, 2020

via the Court's CM/ECF system, thereby serving all counsel of record.

*/s/ Jeffrey M. Harris*