IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

GEORGE WESLEY HUGUELY V,

        *Petitioner*,

    v.

HAROLD CLARKE, Director, Virginia Department of Corrections

        *Respondent*.

Civil Action No. 7:20-cv-30021-TTC

**PETITIONER'S MEMORANDUM REGARDING
RESPONDENT'S REQUESTED DISCOVERY**

Petitioner and Respondent have cooperated in good faith to resolve nearly all open issues pertaining to the upcoming evidentiary hearing in this case. As discussed at the status conference on February 8th, however, the parties continue to have one outstanding dispute regarding discovery material requested by the Commonwealth. Petitioner respectfully submits this brief at the Court's invitation to address that issue.

The Commonwealth has requested production of a prior version of Juror 42's declaration that was prepared during defense counsel's investigation of potential claims to raise in the state habeas proceeding. That earlier version of the declaration was never filed with any court. Juror 42 later signed a revised declaration dated January 11, 2016, which was filed as an exhibit to Mr. Huguely's state habeas petition (that declaration is also in the appendix in this case). As explained below, the law is clear that non-final drafts of declarations or affidavits that are prepared in anticipation of legal proceedings are protected by the attorney work product doctrine. And, given

1

the Commonwealth's extensive opportunities to question Juror 42 through its own investigation, a sworn deposition, and the upcoming evidentiary hearing, the Commonwealth cannot show a "substantial need" to obtain additional materials from defense counsel's investigation file.

## ARGUMENT

Unlike other types of civil cases, the parties to a habeas corpus proceeding are "not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899 (1997); *see also Harris v. Nelson*, 394 U.S. 286, 295, 299 (1969) (finding the "broad discovery provisions" of the Federal Rules of Civil Procedure inapplicable to habeas proceedings but noting that federal courts retained the power to "fashion appropriate modes of procedure"). Discovery in a habeas case may be granted only with leave of court upon a showing of "good cause." *See Bracy*, 520 U.S. at 904; Rule 6(a) of the Rules Governing Section 2254 Cases.

The Commonwealth cannot establish good cause here because the earlier draft of Juror 42's declaration—which was prepared during defense counsel's investigation and was never filed with any court—is protected from discovery by the attorney work product doctrine. The work product doctrine, currently codified in Federal Rule of Civil Procedure 26(b)(3), protects the adversarial process by ensuring that a party cannot "invad[e] the privacy of an attorney's course of preparation." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). Rule 26(b)(3) permits discovery of "documents and tangible things that are prepared in anticipation of litigation" *only* if that material is otherwise discoverable and the party seeking the material has a "substantial need" for it and "cannot, without undue hardship, obtain their substantial equivalent by other means."

There is no question that work product protection applies to materials created by defense counsel and their investigators during an investigation of potential habeas corpus claims. In *Ramirez v. Abreo*, for example, the court held that a habeas investigator's "files are covered under

the attorney work product doctrine." 2010 WL 11565407, at *2 (N.D. Tex. Dec. 22, 2010). And, more generally, the work product protection has long been understood to extend to investigators retained by counsel in preparation for litigation. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975) ("[T]he [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").

Draft documents fall comfortably within the work product doctrine even if those drafts later culminate in a document that is publicly filed with a court. As Judge Payne of the Eastern District has explained, "[a]lthough there does not appear to be any controlling precedent of the Fourth Circuit, courts that have considered the question have recognized that draft documents, although prepared for public consumption, can constitute work product." *ePlus Inc. v. Lawson Software, Inc.*, 2012 WL 6562735, at *5-6 (E.D. Va. Dec. 14, 2012); *see also Bush Dev. Corp. v. Harbour Place Assoc.*, 632 F. Supp. 1359, 1363 (E.D. Va. 1986) (holding that a "draft complaint" was "certainly prepared in anticipation of litigation and is thus entitled to at least the qualified immunity of Rule 26(b)(3)"); *McKinley v. FDIC*, 744 F. Supp. 2d 128, 141-42 (D.D.C. 2010) (draft affidavit was subject to work product protection); *In re: New York Renu with Moistureloc Product Liability Litigation*, 2009 WL 2842745, at *13-14 (D.S.C. July 6, 2006) (same); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46, 49 (S.D.N.Y. 1990) (same).

Another "leading case" explained that "'the work product doctrine does protect information relevant to the *evolution of an affidavit*, including but not limited to communications with the counsel relating to the affidavit, *prior drafts of the affidavit*, and any notes made by counsel while

3

engaging in the process of drafting the affidavit.'" *ePlus*, 2012 WL 6562735, at *5-6 (quoting *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008)) (emphasis added). The public filing of a declaration "waives work product protection as to that draft," but "this does not lead to the waiver of work product protection for the earlier drafts of the document." *Id.* at *6. This position is "in line with the general view that the waiver of the work product protection as to the final draft of a document does not constitute a waiver of the earlier versions of the draft." *Id.*; *see also In re New York Renu*, 2009 WL 2842745, at *12 (noting that the "better view, and the modern trend, is to hold that waiver by disclosure of a final document does not operate as a waiver of the drafts that are work product"). At bottom, once a party has "the final affidavits signed by the third-party witnesses," any "need for the preliminary versions is less apparent." *Randleman*, 251 F.R.D. at 286.

The document the Commonwealth seeks here falls squarely within this rule. It is undisputed that the Commonwealth has in its possession the final version of Juror 42's declaration, which was filed with the state habeas court as an exhibit to Mr. Huguely's petition (and submitted in the appendix to the §2254 petition in this Court). Under the cases cited above, however, any "prior drafts of the affidavit" that reflect the "evolution" of that document fall within the protection of the work product doctrine.

The Commonwealth has also failed to show a "substantial need" to obtain documents from defense counsel's investigation file. *See* FRCP 26(b)(3)(A)(ii) (party requesting work product must show a "substantial need" for the materials and that it "cannot, without undue hardship, obtain their substantial equivalent by other means"). Here, the Commonwealth has had more than ample opportunity to *question Juror 42 directly* about her memory, her credibility, and her recollection of using a dictionary during deliberations. The Commonwealth interviewed Juror 42 in 2016

4

during the state habeas proceedings and took its own signed declaration from her, dated April 29, 2016 (Juror 42 later disavowed much of that statement in her reply declaration dated Aug. 1, 2016). The Commonwealth then had the opportunity to question Juror 42 under oath during her deposition in advance of the evidentiary hearing. And the Commonwealth will have yet another opportunity to question her in-person at the upcoming hearing. Forcing defense counsel to turn over materials from their investigation file is thus entirely unnecessary for the Commonwealth to make a full and vigorous presentation of its case.

*Randelman* is again instructive. There—as here—production of draft declarations was unnecessary because "[p]laintiffs can test the credibility of witnesses through depositions, and they are free to depose some or all of the affiants." *Randelman*, 251 F.R.D. at 286. After all, "[w]hat matters now is whether the affiants in fact adopt and endorse *the statements in the final affidavits*," "not the preliminary drafts." *Id.* (emphasis added); *see also Ramirez*, 2010 WL 11565407, at *2 (denying motion to compel production of habeas investigator's files, explaining that "[t]o the extent [the defendant] may seek to impeach [the investigator] or discredit Plaintiffs' claims of actual innocence, he will likely be able to present his defense through other sources of testimony at trial"); *Hurth v. Campbell*, 2009 WL 857538, at *2 (E.D. Cal. Mar. 30, 2009) (denying discovery of information from habeas counsel's file where "the parties have had eight months to conduct an adequate investigation and interview the witnesses, whose identity were known to [] both parties").

Finally, even if the Court disagrees that the draft declaration constitutes protected work product, the Commonwealth still cannot show "good cause" to require the production of this document. *See* Rule 6(a) of the Rules Governing Section 2254 Cases (party to habeas case must obtain leave of court and show "good cause" to obtain discovery). As noted, the Commonwealth has already had multiple opportunities to exhaustively question Juror 42 and will have yet another

5

opportunity to do so at the upcoming hearing. Moreover, allowing the prosecution to probe into defense counsel's investigation files would pose serious risks for the adversarial process in habeas corpus cases. While investigating potential claims for a habeas petition, defense counsel may interview and take statements from dozens of witnesses (or more). Yet, based on counsel's analysis and strategic judgments, only a handful of those statements may ultimately be filed with the court in support of a habeas petition. If defense counsel faced the risk of having to open up its investigation file to produce all witness statements—even draft statements not submitted to a court—it would chill the investigation process and potentially deter counsel from interviewing witnesses at all, unless counsel knew in advance exactly what the witness was planning to say. The need to avoid such a risk is precisely why Rule 6(a) carefully limits discovery in federal habeas corpus proceedings.[1]

## CONCLUSION

The Court should deny the Commonwealth's request for discovery from defense counsel's investigation file.

---

[1] Moreover, if the Commonwealth is granted discovery into defense counsel's investigation file, Mr. Huguely would request reciprocal discovery into the Commonwealth's file. Production of this material would also likely prompt the need for testimony from defense counsel's investigator to explain why revisions were made to Juror 42's declaration before the final version was submitted. All of this would delay and complicate what has been an efficient and orderly process thus far. Given that all of the relevant witnesses were deposed under oath and given that the key witnesses will offer live testimony at the hearing, any discovery into the parties' investigation files would ultimately prove to be a distraction with no offsetting benefits.

          Respectfully submitted,

          */s/ Jonathan P. Sheldon*

| | |
|---|---|
| Jonathan P. Sheldon (VA Bar #66726) | Jeffrey M. Harris (VA Bar #93883) |
| Sheldon & Flood, PLC | Bryan K. Weir (VA Bar #82787) |
| 10621 Jones Street, Suite 301A | CONSOVOY MCCARTHY PLLC |
| Fairfax, VA 22030 | 1600 Wilson Boulevard, Suite 700 |
| (703) 691-8410 | Arlington, VA 22209 |
| jsheldon@sfhdefense.com | (703) 243-9423 |
| | jeff@consovoymccarthy.com |

Dated: February 11, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed on February 11, 2021 via the Court's CM/ECF system, thereby serving all counsel of record.

*/s/ Jonathan P. Sheldon*
