UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| GEORGE WESLEY HUGUELY, V, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 7:20cv30021 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

In 2012, Petitioner George Huguely was convicted of second-degree murder in the death of his ex-girlfriend, Yeardley Love. Following unsuccessful direct appeal and state habeas proceedings, in 2020 Huguely filed the present federal habeas action. It is now before the court on Huguely's objection to Respondent Harold W. Clarke's discovery request.

## BACKGROUND

In December 2020, the court issued a memorandum opinion and order denying all of Petitioner George Huguely's federal habeas claims, except for his assertion that the jury in his state murder trial had improperly consulted a dictionary for the definition of a vital legal term ("malice") during its deliberations, in violation of the Sixth Amendment. (ECF. Nos. 39, 40.) The court took this single claim under advisement pending the outcome of an evidentiary hearing to determine (1) whether the jury did, in fact, consult a dictionary for the definition of this legal term, and (2) if they did, whether that action prejudiced Huguely.

To prepare for this evidentiary hearing, which is scheduled for Thursday, February 18, 2021, the parties deposed nearly two dozen witnesses, including the jurors and court and

security personnel who may have interacted with the jurors during trial. The parties stipulated that the transcripts of those depositions should be made part of the evidentiary record of this habeas proceeding and have jointly filed them for that purpose. (*See* ECF No. 57.) In addition, the parties intend to call several of these witnesses to testify in person at the February 18 hearing.

Among those likely to be called is Juror #42. As discussed in detail in the parties' briefs and the court's prior memorandum opinion, Juror #42 plays a critical role in Huguely's effort to prove that the jury improperly consulted a dictionary during its deliberations; she is the only person who has asserted that a dictionary was used. To date, none of her fellow jurors nor any of the courthouse personnel who interacted with the jury have corroborated her account.

Juror #42 has not been consistent in describing the purported use of a dictionary. As described in detail in the court's prior memorandum opinion and the final state habeas decision, she has provided three sworn declarations on this issue. There are material contradictions across these three affidavits—most notably whether the alleged dictionary at issue was a single piece of paper, a stack of papers, or a hardback book. Based on her recent deposition, however, Juror #42 appears to have settled on the recollection that the alleged dictionary was, in fact, a book. She maintains that another juror obtained the dictionary from unidentified court personnel at some point during its deliberations.

In preparing for the final evidentiary hearing, Respondent recently learned that counsel for Huguely has in its possession a signed declaration by Juror #42 that predates any of her statements in the record. This declaration, which would constitute a fourth written account of this witness, was never filed in the state habeas proceeding nor was it utilized by Petitioner in

support of his habeas claims. Respondent has requested that Huguely's counsel produce this declaration in advance of the evidentiary hearing. Huguely declined, arguing that that this "prior version" of the declaration, which was prepared in anticipation of litigation (*i.e.*, the state habeas proceeding) falls under the attorney work-product doctrine and should be protected from disclosure. Huguely also argues that Respondent has failed to demonstrate substantial need or undue hardship justifying disclosure. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Respondent contends that, while draft witness statements are generally protected by the work-product privilege, Juror #42's statement ceased to be work product when she signed it. Respondent takes the position that Juror #42's signature transformed the document from a draft statement covered by Rule 26 into a final witness statement subject to disclosure.

The court directed Huguely to produce Juror #42's unfiled declaration so that it could review it *in camera*. Having completed that review, the court is prepared to rule on Huguely's objection to Respondent's request for production. For the reasons stated below, the court finds: (1) the declaration at issue was prepared in anticipation of litigation and thus constitutes fact work product; and (2) Respondent has failed to demonstrate substantial need to justify its production. The court will therefore sustain Huguely's objection and will not require him to disclose the declaration to Respondent prior to the hearing.

## DISCUSSION

"The work product doctrine protects the adversarial trial process and is designed to prevent a potential adversary from gaining an unfair advantage." *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008). As the Supreme Court noted in *Hickman v. Taylor*—which recognized, for the first time, the common-law privilege attendant to an

attorney's mental impressions and opinions concerning litigation—the doctrine protects "against invading the privacy of an attorney's course of preparation." 329 U.S. 495, 512 (1947). Now codified in Federal Rule of Civil Procedure 26(b)(3), the work-product doctrine allows an opposing party to "discover documents and tangible things that are prepared in anticipation of litigation or for trial" (*i.e.*, work product) if (1) they are otherwise discoverable under Rule 26, and (2) "the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." But Rule 26(b)(3)(B) goes on to provide that a court shall not permit discovery of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation."

In sum, Rule 26 recognizes two categories of work product, each subject to a different level of protection. Fact work product—generally, documents and items prepared in anticipation of litigation—are extended qualified protection and may only be produced upon a showing of substantial need and undue hardship. Opinion work product—materials revealing counsel's thought process, impressions, or litigation strategy— "can be discovered only in very rare and extraordinary circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997).

Courts, however, are split on the issue of whether witness declarations prepared at the direction of counsel constitute work product under Rule 26(b)(3) and are thus protected from disclosure. On the one hand, as Huguely points out, numerous courts have concluded that work-product protections extend to witness declarations and affidavits. *See, e.g., ePlus Inc. v. Lawson Software, Inc.*, 2012 U.S. Dist. LEXIS 177616, *19–20 (E.D. Va. Dec. 14, 2012); *In re:*

*New York Renu with Moistureloc Product Liability Litigation No.* 2:06-MN-77777-DC, 2009 U.S. Dist. LEXIS 80446, at \*403–5 (D.S.C. July 6, 2009); *Randleman,* 251 F.R.D. at 285 (N.D. Ohio 2008); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007); *A.F.L. Falck S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46, 49 (S.D.N.Y. 1990). And some of these courts have gone further, holding that the production of a final version of a witness's declaration—and the attendant waiver of work-product protection for that final version—does not result in a waiver of the doctrine for an earlier, unused version of that declaration. *See ePlus Inc.,* 2012 U.S. Dist. LEXIS 177616, \*22; *In re: New York Renu*, 2009 U.S. Dist. LEXIS 80446 at \*40-43; *Kyoei Fire & Marine Ins. Co.*, 248 F.R.D. at 155.

But other courts have reached the opposite conclusion, holding that witness affidavits and declarations do not constitute attorney work product and should not be shielded from production. *See Bosaldu v. Goodrich Corp.*, U.S. Dist. LEXIS 36815, at \*4 (E.D. Tenn. April 29, 2009); *Walker v. George Koch Sons, Inc.*, 2008 U.S. Dist. LEXIS 81919, at \*18 (S.D. Miss. Sept. 18, 2008); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, 2007 U.S. Dist. LEXIS 95527, at \* 5 (S.D. Ohio Dec. 21, 2007). This conclusion is based on the premise that witness declarations are "statements of facts within the personal knowledge of the witness," not the statements, mental impressions, or opinions of counsel. *See Walker*, 2008 U.S. Dist. LEXIS 81919, at \*18.

## ANALYSIS

The Fourth Circuit has not ruled on this issue, leaving this court to choose between these two approaches. On balance, the court finds the more protective approach persuasive and will adopt it in this case. To be sure, declarations typically consist of statements or chronologies of facts based on the personal knowledge of the witness, and generally do not

contain the thoughts, opinions, or express strategies of a party's counsel. But it is also true that declarations are usually the product of an attorney's efforts in furtherance of his or her litigation strategy and thus should be afforded some level of protection. They clearly fall within the ambit of Rule 26(b)(3)(B)'s protection, as they are "documents . . . prepared in anticipation of litigation." They also fall within the spirit of the rule: Attorneys invest time, effort, and expense in locating and interviewing potential witnesses, putting the witnesses' accounts on paper, and deciding whether and how to utilize those statements. Although Huguely suggests that the "evolution" of Juror #42's declaration, as evidenced by any discrepancy between the "non-final" and final versions, may reveal something about counsel's mental impressions and case strategy—and thus swathe the initial version in the strong protection afforded opinion work product—the court is not persuaded. The earlier declaration simply memorializes one version of Juror #42's account of what occurred during the trial and deliberations; it neither says nor suggests anything about counsel's mental impressions about that account, nor reveals any litigation strategy for advancing Huguely's habeas claims. It is fact work product, and thus subject to disclosure upon Respondent's showing of substantial need and undue hardship.[1]

The court concludes that Respondent has not established substantial need or undue hardship in this case. Like Huguely, Respondent has had ample opportunity to interview Juror #42 about the dictionary claim both during the prior state habeas and this federal proceeding. Indeed, a Virginia State Police investigator working with Respondent's counsel interviewed

---

[1] The court also finds that Huguely has not waived work-product protection for the earlier declaration by submitting and relying upon a final version in the habeas proceedings. *See ePlus Inc.,* 2012 U.S. Dist. LEXIS 177616, *22 ("Of course, the production of the final draft of the document waives work product protection as to that draft. Nevertheless, this does not lead to waiver of work product protection for earlier drafts.").

Juror #42 about these matters and obtained a signed declaration from her during the same period that Huguely's counsel obtained the disputed declaration. And less than two weeks ago, Respondent and Petitioner deposed Juror #42 at some length regarding her prior statements and purported recollections about the use of a dictionary.

Respondent will have yet another opportunity to examine Juror #42 when she is called as a witness at the final evidentiary hearing. At this hearing, Respondent can again challenge Juror #42 based on prior inconsistencies in her various accounts, including those set forth in the declaration obtained from his law-enforcement agent. Although any factual discrepancies between the initial and final affidavits are relevant to her credibility and go directly to the weight the court should give her testimony, the record in this case—including the multiple prior declarations of this witness and other discrepancies between her recollection and those of others—already provides fertile grounds for challenging her testimony.

To put it another way, this is not a case where the opposing party is in the dark about what a witness is going to say (or has already said), such that it would be materially disadvantaged in the litigation. Juror #42 has spoken at length on this topic to both parties, and they are both amply prepared to present and challenge her testimony at the final hearing. For these reasons, the court will sustain Huguely's objection and will not order him to provide the initial affidavit to Respondent.

## **CONCLUSION**

Because Juror's #42's prior written statement is fact work product, and because Respondent has not shown substantial need for and undue hardship without that statement, Huguely's objection to Respondent's request for production of Jury #42's statement will be sustained.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 15th day of February, 2021.

*/s/ Thomas T. Cullen*

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE